FILED
2010 Mar-02 PM 02:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| Rodger L. Bolden, | ) |
|     Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 09-G-0654-NE |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Rodger L. Bolden, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

  (4)  whether the claimant can perform her past work; and

  (5)  whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

  In the instant case, the ALJ, Randall C. Stout, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found the plaintiff unable to perform his past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony.  Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

4

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF AN INABILITY TO SUSTAIN FULL TIME WORK AT STEP FIVE OF THE SEQUENTIAL ANALYSIS

In this circuit, an inability to engage in full time work normally requires a finding of "disabled." Johnson v. Harris, 612 F.2d 993, 998 (5th Cir. 1980)("It has been held that a physical limitation which prevents a claimant from working a full work-day, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the Act.");[1]  Smith v. Schweiker, 646 F.2d 1075, 1081(5th Cir. June 4, 1981)("[T]his Court unequivocally held that a 'physical limitation which prevents the claimant from working a full work day, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the Social Security Act.'" (quoting Johnson v. Harris)). But cf. Kelly v. Apfel, 185 F.3d 1211, 1215 n. 4 (11th Cir. 1999) ("We save for another day the question of the relevance of part-time work at Step Five . . . .").

---

[1]   In Bonner v. City of Prichard, 661 F. 2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

It is the Commissioner's position in this circuit that only an ability to do full-time work will prevent a finding of disabled at step five.[2]  Kelly, 185 F.3d at 1214 ("In other words, at Step Five, the government's present representation is that only an ability to do full-time work will permit the ALJ to render a decision of not disabled.") The Kelly court noted that this position is based upon Social Security Ruling 96-8p:

> That ruling provides that the relevant concept at Step Five is the residual functional capacity to perform work on a "regular and continuing basis." Social Security Ruling 96-8p.  "A 'regular and continuing basis' means 8 hours a day for 5 days a week, or an equivalent work schedule."  Id.

Kelly, 185 F.3d at 1214.  Therefore, if the plaintiff cannot perform his prior work, the burden is on the Commissioner at step five to show that the plaintiff can sustain full-time work.  If the Commissioner fails to carry this burden, the plaintiff must be found disabled.

## DISCUSSION

The plaintiff alleges he is disabled due to an on-the-job injury suffered in June 2005.  He alleges an onset of disability as of July 28, 2005.  On September 26, 2005, the plaintiff underwent a left T7-T8 microendoscopic diskectomy performed by Dr. Pritchard.  On October 28, 2005, Dr. Pritchard observed that the plaintiff was having new types of pain and he was to be further evaluated with an MRI scan of his thoracic spine.  His pain medications were

---

[2]  For a discussion of the difference between the inquiry at Step One and Step Five, and the implications of an ability to sustain part-time work at Step One, see Kelly, 185 F.3d at 1214.

refilled by Dr. Pritchard "as he has not been getting good pain relief." Record 230. The MRI scan showed "persistence of the disk herniation at T7-T8 with mass effect upon the spinal cord." Record 227. Dr. Pritchard recommended "a total diskectomy with an interbody fusion and stabilization procedure." Record 227. Surgery was performed on November 30, 2005. On March 31, 2006, Dr. Pritchard saw the plaintiff who reported "that he is somewhat better but continues to have pain and at times experiences some tightness in his legs. He feels that he is not fit to return to work." Record 225. However, Dr. Pritchard released the plaintiff to work with restrictions of no lifting over 20 pounds and no climbing or working over a height of three feet. Record 225. The treatment note indicates the plaintiff was to follow these work restrictions and to return in three months. Dr. Pritchard's note states that if the plaintiff "is not improved, we would consider him for a repeat MRI imaging." Record 225.

There are no follow-up treatment notes from Dr. Pritchard in the record.[3] However, the record indicates the plaintiff saw Dr. Pritchard at least twice after March 31, 2006. In her report, Patsy V. Bramlett, a certified rehabilitation counselor, referred to treatment notes from Dr. Pritchard. Ms.

---

[3] Treatment notes from Dr. Prichard subsequent to March 31, 2006, were attached to the plaintiff's brief. These records were not submitted at the administrative level and are not part of the record on appeal. The court has not considered them in reaching its decision.

Bramlett reviewed a treatment note from Dr. Pritchard of June 30, 2006, that indicated the plaintiff "had not improved and was continuing to experience pain in his back, radiating around his side, hips and down his back." Record 134. According to Ms. Bramlett's report, Dr. Pritchard ordered an MRI which revealed no evidence of disk herniation. Ms. Bramlett also summarized a treatment note from July 11, 2006, in which Dr. Pritchard "stated that he had nothing else to offer [the plaintiff] from a neurosurgical standpoint" and "prescribed continuation medication for pain and spasms." Record 134.

The plaintiff was treated by Dr. Murphy for pain management. Dr. Murphy's treatment notes show that the plaintiff repeatedly reported pain at the severe level from fall 2006 through March 3, 2008. These treatment notes show that the plaintiff was treated with Lortab 10 throughout this period of time. He also received multiple epidural steroid injections in an attempt to relieve his pain.

Dr. Murphy gave several opinions as to the plaintiff's ability to perform work. In a form completed October 17, 2006, Dr. Murphy stated that the plaintiff had undergone thoracic and lumbar epidural steroid injections, with poor response, and subsequently underwent thoracic spine surgery, also with a poor response. Record 327. Dr. Murphy noted that the plaintiff was currently being treated for chronic pain with narcotic-based medicines. He stated that the plaintiff

was "permanently disabled." Record 327. On this form, Dr. Murphy indicated the plaintiff would only be able to sit, stand or walk for a total of six hours in an eight-hour workday. Record 326. In his deposition given in connection with the plaintiff's workers compensation claim, Dr. Murphy was asked whether he the plaintiff was permanently unable to work. He responded: "In my opinion so, yes, sir." Record 277. In a functional assessment form completed August 20, 2007, Dr. Murphy indicated the plaintiff would be required to lie down as needed during the workday for one half to one hour at a time. Record 352.

The Social Security Administration referred the plaintiff for a neurology evaluation by Dr. Norwood on October 8, 2007. While Dr. Norwood indicated that he found no objective neurological deficit, he opined: "I believe that he is significantly limited by pain. I believe that he will be unable to do work, which requires prolonged standing, sitting, walking, lifting, and carrying." Record 428.

In his decision the ALJ refused to credit the opinions of Drs. Norwood and Murphy. He also refused to credit the plaintiff's testimony that he suffered from disabling pain. The reason given by the ALJ for refusing to credit both the plaintiff's testimony and the opinions of Drs. Norwood, and Murphy was that the plaintiff's testimony and the doctors opinions were inconsistent with the

opinion of a treating physician, Dr. Pritchard. The ALJ explained his decision as follows: "The undersigned has relied on the opinion of Dr. Pritchard, assistant professor of neurosurgery at the Kirklin clinic, and has rejected the opinion [sic] of Dr. Murphy, Dr. Norwood, Mr. Hamrick, and Ms. Bramlett, whose [sic] gave disabling assessments." Record 16.

In spite of the overwhelming evidence showing that the plaintiff continued to suffer severe pain following the surgery performed by Dr. Pritchard, the ALJ rested his entire decision on Dr. Pritchard's March 2006 treatment note in which he released the plaintiff to return to work with a 20 pound lifting restriction. However, the ALJ's finding that the plaintiff had failed back surgical syndrome in itself shows that exclusive reliance upon Dr. Pritchard's treatment note of March 2006 was unreasonable.[4] The failure of plaintiff's spine surgery to relieve his pain is the hallmark of failed back surgery syndrome. Relying upon the opinion of the plaintiff's surgeon given three and one half months after his second surgery, and rejecting the opinion of his treating pain management specialist, Dr. Murhphy,

---

[4] Failed back syndrome is not a single disease but a collection of conditions that emerge after any number of surgeries or other treatments. Patients with failed back syndrome have undergone one or more surgical procedures and continue to have debilitating pain. This pain may be caused by recurring disc herniation, excessive scarring, or injury to nerve roots.

http://www.einstein.edu/yourhealth/ortho/article6889.html#failedback.

who treated him continuously for many months thereafter, was unreasonable. As both a treating physician and pain management specialist, Dr. Murphy's opinions are entitled to extra weight.[5]

The overwhelming evidence in the record shows that the plaintiff continued to be treated for severe pain after March 2006 with epidural steroid injections and narcotic pain medications. The ALJ failed to give Dr. Murphy's opinions proper weight. The ALJ's recited reason for rejecting those opinions would not be sufficient evidence to cause a reasonable person to reject them. Because the ALJ's recited reason for rejecting Dr. Murphy's opinions is not supported by substantial evidence, those opinions must be accepted as true.

On more than one occasion Dr. Murphy opined the plaintiff would be unable to work because of pain. Dr. Murphy indicated in October 2006 the plaintiff would only be able to work for a total of six hours in an eight-hour workday. An inability to sustain full time work requires a finding of disabled. In August 2007 Dr. Murphy indicated the plaintiff would be required to lie down as needed during the workday for one half to one hour at a time. At the ALJ hearing, the vocational expert testified that if an individual had to be absent from his

---

[5] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5)

workstation on a frequent basis beyond normally scheduled work breaks, there would be no jobs the plaintiff could perform. Record 41-42. Therefore, based upon the opinions of the plaintiff's treating pain management specialist, which were not properly discredited, the plaintiff is disabled within the meaning of the Social Security Act.

      An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

      DONE and ORDERED 2 March 2010.

                                         UNITED STATES DISTRICT JUDGE
                                                J. FOY GUIN, JR.